# EXHIBIT 1

CROSNER LEGAL, P.C.
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Kurt D. Kessler (SBN 327334)
kurt@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

Attorneys for Plaintiff

**ELECTRONICALLY FILED**
SUPERIOR COURT,
COUNTY OF LAKE
07/03/2025
Krista D. LeVier
By _____
Melanie M Smith, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LAKE

| | |
|---|---|
| HALEY STEPHENS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BEST NEST WELLNESS, LLC, a Colorado company,<br><br>Defendant. | Case No. CV427315<br><br>**CLASS ACTION COMPLAINT FOR**:<br><br>(1) Violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*;<br>(2) Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq.*; and<br>(3) Breach of Implied Warranties<br><br>JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT

Plaintiff Haley Stephens ("Plaintiff") brings this action against Defendant Best Nest Wellness, LLC ("Defendant" or "Best Nest"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to Plaintiff's acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys as follows:

**SUMMARY OF BEST NEST'S CONTAMINATED PRENATAL SUPPLEMENTS**

1.      Best Nest sells its "Mama Bird®" Prenatal Multi+ dietary supplements on its website, https://www.lovemamabird.com/collections/prenatal and on https://amazon.com (the "Product" or "Products"). The problem is the Product is contaminated with lead but is advertised as being free of contaminates like heavy metals:

*[see next page]*

Best Nest Website[1]

## Third Party Testing

**Integrity in all we do:**

Our mission is to inspire families to reach their best brain health and highest potential. It's in who we are, the partners we choose, what we make, and the benefits you feel. We will always deliver what matters—safety, quality, security, sustainability, and confidence. This is our promise to you.



**GLUTEN TESTS**



**HEAVY METALS TESTS**



**NUTRIENT CONTENT TESTS**



**MICROBIOLOGY TESTS**



**PESTICIDES TESTS**



**DISINTEGRATION TESTS**

**What's on the label is what's in your bottle:**

That means all of our products are meticulously created, tested multiple times, and held to strict standards. If they don't meet these requirements, they don't make it to your home.

---

[1] https://www.lovemamabird.com/products/best-prenatal-vitamin

CLASS ACTION COMPLAINT



CLASS ACTION COMPLAINT



CLASS ACTION COMPLAINT

Amazon.com Website[2]

[2] https://www.amazon.com/Prenatal-Methylated-Vitamins-Methylfolate-Pregnancy/dp/B076G62QN8

5



CLASS ACTION COMPLAINT



CLASS ACTION COMPLAINT



CLASS ACTION COMPLAINT



2.      As shown above the "Best Nest Website Representations" include: "**Third Party Testing**"; "Integrity in all we do"; "We will always deliver what matters—safety quality, security, sustainability, and confidence. This is our promise to you." "**HEAVY METALS TESTS**"; "What's on the label is what's in your bottle"; and "That means all or our product are meticulously created, tested multiple times, and held to strict standards. If they don't meet these requirements, they don't make it to your home."

3.      As shown above, the "Amazon Website Representations" include "**TESTED FOR METALS.**"

CLASS ACTION COMPLAINT

4. Collectively, the Best Nest Website Representations and the Amazon Website Representations are referred to herein as the "**Free from Heavy Metals Representations.**"

5. Unlike medications, dietary supplements, including those for prenatal care, don't have to be evaluated for safety or effectiveness by the Food and Drug Administration before reaching stores.

6. Best Nest utilizes this lack of regulation to use the Free from Heavy Metals Representations when the Products are in fact contaminated with lead.

7. Luckily, the California consumer protection laws at issue prohibit companies from such false and misleading advertising.

8. There are no "safe" levels of lead.

9. The World Health Organization ("WHO") states: "There is no level of exposure to lead that is known to be without harmful effects." [3]

10. The U.S. Centers for Disease Control and Prevention ("CDC") states: "There are no safe levels of lead in the blood." [4]

11. Leading researchers in this area warn: "no level of lead exposure is safe …"[5]

12. Lead affects numerous organs and systems in the body and accumulates over time. This leads to health risks and toxicity, including hindering neurological function, anemia, and kidney damage. [6]

---

[3] World Health Organization, *Lead Poisoning* (Aug. 11, 2023), *available at* https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health (emphasis orignial)

[4] .S. Centers for Disease Control and Prevention, *About Childhood Lead Poisoning Prevention* (May 23, 2024) *available at* https://www.cdc.gov/lead-prevention/about/index.html

[5] Obeng-Gyasi E. Lead Exposure and Cardiovascular Disease among Young and Middle-Aged Adults. Medical Sciences. 2019; 7(11):103. https://doi.org/10.3390/medsci7110103

[6] Wani AL, et al., *Lead toxicity: a review*, INTERDISCIP TOXICOL. (June 2015), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4961898

CLASS ACTION COMPLAINT

13.    To make matters worse, the Product at issue is a "prenatal" supplement intended to support healthy prenatal development. The lead contamination is not healthy and does not support prenatal development.

14.    Consumption of lead during pregnancy carries significant health risks including an increased risk for miscarriage, causing the baby to be born too early or too small, harm to the baby's brain, kidneys, and nervous system, and causing the child to have learning or behavior problems.[7] "Lead can be stored in the bones of adults and can be released into the blood during pregnancy. Lead can pass from a parent to their unborn baby. The best way to prevent lead in the blood is preventing lead exposure."[8]

15.    "When a person is exposed to lead over a long period of time or at a high level, the body will store lead in the bones and teeth. Lead can stay in the bones and teeth for many years. During pregnancy and breastfeeding, lead can leave bone and move back into the blood."[9]

16.    "Lead can cross the placenta and reach the developing fetus. The amount of lead in the blood of the person who is pregnant, and the fetus is almost the same. It is not known how early lead can reach the fetus in pregnancy, but reports have documented lead in a fetus as early as the end of the first trimester."[10]

17.    Further, there are several other prenatal supplements on the market that do not have the affirmative Free from Heavy Metals Representations and do not contain any detectable lead. For example, Naturalis Vegan Prenatal supplement was tested and found to contain a non-detectable level of lead. The United States Government Accountability Office tested several

---

[7] U.S. Centers for Disease Control and Prevention, Childhood Lead Poisoning Prevention, Risk Factors and Pregnancy, available at https://www.cdc.gov/lead-prevention/risk-factors/pregnancy.html#:

[8] Id.

[9] Mother To Baby | Fact Sheets [Internet]. Brentwood (TN): Organization of Teratology Information Specialists (OTIS); 1994-. Lead. 2024 Mar. Available at https://www.ncbi.nlm.nih.gov/books/NBK582785/

[10] Id.

11

CLASS ACTION COMPLAINT

prenatal supplements and found that half of those tested did not contain any detectable levels of lead or cadmium.[11]

18.    No reasonable consumer would buy the Products if they knew the Products contained lead in contradiction to the Free from Heavy Metals Representations promise.

19.    Heavy metal testing performed on the Products has been done. The test results revealed that the Products tested positive for **186 ppb of lead**. These test results are applicable to the Products not purchased by Plaintiff as they contain the exact same ingredients that are sourced from the same areas and the Product is packaged in the same facilities.

20.    Accordingly, Plaintiff brings this action seeking redress for Best Nest's false advertising and deceptive conduct on behalf of consumers in the United States and California.

### JURISDICTION AND VENUE

21.    This Court has jurisdiction pursuant to Article VI, Section 10 of the California Constitution and California Code of Civil Procedure § 410.10.

22.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sales of the Products to consumers, including Plaintiff. Defendant sold the Product at issue to Plaintiff in this county.

23.    Venue is proper in this Court because Defendant is doing business in this County. Cal Civ. Code § 1780(d). Defendant sold the Product at issue to Plaintiff in this county.

### PARTIES

24.    Defendant Best Nest is a Colorado corporation that maintains its principal place of business in Denver. Best Nest was a manufacturer, distributor, marketer, and/or seller of the

---

[11] U.S. Government Accountability Office. *Prenatal Supplements: Amounts of Some Key Nutrients Differed from Product Labels*. GAO-24-106689; Q&A Report to the Chair, Subcommittee on Human Rights and the Law, Committee on the Judiciary, U.S. Senate (Dec. 12, 2023).

CLASS ACTION COMPLAINT

Product throughout the class period.

25.    Plaintiff is a resident of Lake County, California. Plaintiff purchased the Product during the class period. Plaintiff relied on Best Nest's deceptive advertising claims and material omissions when purchasing the Product as set forth below.

### FACTUAL ALLEGATIONS

### THE FREE FROM HEAVY METALS REPRESENTATIONS LEAD REASONABLE CONSUMERS TO BELIEVE THAT THE PRODUCT DOES NOT CONTAIN HEAVY METALS

26.    Best Nest owns the "Mama Bird" brand and is the manufacturer of various supplements. Here, all Mama Bird supplements are advertised with the Free from Heavy Metals Representations. Best Nest promises that the Product do not contain heavy metals, and the Free from Heavy Metals Representations are clearly displayed at the point of purchase on Best Nest's website and on amazon.com.

27.    Of course, reasonable consumers believe this to mean that the Product has been tested for heavy metals like lead and *does not contain any lead.*

28.    The advertising for each Product gives reasonable consumers the belief that the Product has been tested to show no contamination of toxic substances like lead.

### HEAVY METAL TESTING OF THE PRODUCT

29.    Quantitative analysis of lead, cadmium, arsenic, and mercury by inductively couple plasma mass spectrometry utilizing EPA (ICPMS-QNT-EL-HM) testing protocols, the industry standard, found that the Products contain 186 ppb of lead shown below:

13

CLASS ACTION COMPLAINT

| SAMPLE ID: | 320244 |
| --- | --- |
| | Best Nest Wellness Mama Bird Prenatal Multi Plus - Prenatal Care Supplement Supports Brain & Digestive Health - Vegan Multivitamin with L-Methylfolate, Probiotics & More - 30 Caplets (30 Servings) |
| ANALYSIS: | Quantitative analysis of Lead, Cadmium, Arsenic, and Mercury by Inductively Couple Plasma Mass Spectrometry utilizing EPA 3052 (ICPMS-QNT-EL-HM) |
| RESULTS: | Element | Result |

| Element | Result |
| --- | --- |
| As | 0.03 ug/g |
| Cd | 0.02 ug/g |
| Pb | 0.186 ug/g |
| Hg | ND |

30.    Best Nest could have, but failed, to take steps to reduce or remove the lead in the Products. Instead of informing consumers about the lead contamination, Best Nest does the opposite—it created the advertisements that use the Free from Heavy Metals Representations which encourages consumers to purchase the Products on the belief that the Products have been tested and determined to not be contaminated with toxic substances such as lead.

### EXPOSURE TO HEAVY METALS ARE HARMFUL TO HUMAN HEALTH

31.    The World Health Organization says that "exposure to lead can affect multiple body systems" and that "there is no level of exposure to lead that is known to be without harmful effects."[12]

32.    "Lead can be absorbed by the intestine and through the skin, and almost 90% of it binds to red blood cell proteins. Once inside the human body, lead may travel to different tissues and organs, including the liver and kidneys, where it can cause damage to cells and tissues."[13]

---

[12] *Lead Poisoning*, WORLD HEALTH ORGANIZATION, *available at* https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health#:~:text=Lead%20in%20the%20body%20is,measurement%20of%20lead%20in%20blood.

[13] The Institute for Functional Medicine, *Low-Level Lead Exposure and Health Risks* (Nov. 14, 2024) available at https://www.ifm.org/articles/low-level-lead-exposure-implications-human-health

14

CLASS ACTION COMPLAINT

33.    "Lead alters very basic nervous system functions, like calcium-modulated signaling, at very low concentrations in vitro."[14] "Imaging studies of adults who had elevated blood lead levels in childhood have demonstrated region-specific reductions in the brain's volume and alterations of its microstructure, as well as a significant impact on brain reorganization."[15]

34.    "Lead is particularly dangerous because it can accumulate in the body over time, leading to chronic exposure even from small amounts."[16]

35.    Lead exposure and its relation to hypertension have been demonstrated in the literature, with increases in blood lead level increasing blood pressure.[17] "Lead's effect on the cardiovascular system and cardiovascular-related markers has been well noted in the literature. The mechanism by which lead induces hypertension may be related to oxidative stress, inflammation, alterations in the renin–angiotensin–aldosterone system, alteration of vasoactive and volume regulatory hormones, and nitric oxide dysregulation, among other mechanisms."

36.    Cancer-specific mortality has been associated with urinary lead levels.[18]

37.    Lead is "known to the state to cause cancer." 27 Cal. Code of Regs. § 27001(b).

38.    "[L]ead exposure results in DNA damage via promoting oxidative stress and the promoter methylation of DNA repair genes in human lymphoblastoid TK6 cells."[19]

---

[14]https://www.aap.org/en/patient-care/lead-exposure/lead-exposure-in-children/#:~:text=Lead%20alters%20very%20basic%20nervous,other%20events%20crucial%20to%20development.

[15] Id.

[16] MM Coveny, The Dangers of Lead in Food: Understanding the Risks and Protecting Your Health, Food Poisoning News (Aug 20, 20224) available at https://www.foodpoisoningnews.com/the-dangers-of-lead-in-food-understanding-the-risks-and-protecting-your-health/

[17] Obeng-Gyasi E. Lead Exposure and Cardiovascular Disease among Young and Middle-Aged Adults. Medical Sciences. 2019; 7(11):103. https://doi.org/10.3390/medsci7110103

[18] Li Sen , Wang Jiaxin , Zhang Biao , Liu Yuan , Lu Tao , Shi Yuanyuan , Shan Guangliang , Dong Ling, rinary Lead Concentration Is an Independent Predictor of Cancer Mortality in the U.S. General Population. Frontiers in Oncology;2018;8(ISSN=2234-943X).

[19] Xiangquan Liu1ABCDE, Jingying Wu2BCD, Wenyan Shi3EF, Wenhua Shi4CDF, Hekun Liu5DEF, Xiaonan Wu. Lead Induces Genotoxicity via Oxidative Stress and Promoter

15

CLASS ACTION COMPLAINT

39.    Lead exposure at low-levels is a recognized "risk factor for cardiovascular disease."[20] A study examining 14,289 adults in the U.S. found "that concentrations of lead in blood lower than 5 μg/dL (<0·24 μmol/L) are associated with all-cause mortality, cardiovascular disease mortality, and ischaemic heart disease mortality."[21]

40.    No level of lead exposure is safe.[22]

41.    Thus, the lead at the levels present in the Products poses an unreasonable safety hazard to consumers and the Free from Heavy Metals Representations are not true.

## PLAINTIFF'S PURCHASES OF THE PRODUCTS

42.    Plaintiff purchased the Mama Buird Prenatal Multi+ Product from the Best Nest website on April 10, 2025, March 11, 2025, and February 9, 2025, paying approximately $48.10 for each purchase and on January 10, 2025, September 29, 2024, and August 30, 2024, paying approximately $41.15 for each purchase. In total, she paid approximately $556.35 for the Products. Plaintiff made these purchases while in California and she relied on the Free from Heavy Metals Representations on the Best Nest website when she decided to purchase the Products. The Free from Heavy Metals Representations were a material factor in deciding to purchase the Products.

43.    When purchasing the Products, Plaintiff was not aware of the lead in the Products which directly contradicts with the Free from Heavy Metals Representations. After reading the Free from Heavy Metals Representations displayed on Best Nest's website, Plaintiff purchased the Products on the assumption that the advertising was accurate, and that the Products did not

---

Methylation of DNA Repair Genes in Human Lymphoblastoid TK6 Cells. Medical Science Monitor;2018;24:4295-4304.

[20] Prof Bruce P Lanphear, MDa blanphear@sfu.ca · Stephen Rauch, MPHb · Peggy Auinger, MSc · Ryan W Allen, PhDa · Prof Richard W Hornung, DrPH. Low-level lead exposure and mortality in US adults: a population-based cohort study. The Lancet;April 2018;3(4):E177-E185

[21] *Id.*

[22] Obeng-Gyasi E. Lead Exposure and Cardiovascular Disease among Young and Middle-Aged Adults. Medical Sciences. 2019; 7(11):103. https://doi.org/10.3390/medsci7110103

16

contain harmful substances like lead as represented by the Free from Heavy Metals Representations.

44. Had Plaintiff known that there are much safer prenatal supplements on the market that are not falsely advertised like the Naturalis Prenatal supplement which contains no lead, she would not have bought Best Nest's Products. By purchasing the deceptively advertised Products, Plaintiff suffered injury in fact when she spent money to purchase the Products she would not have purchased absent Best Nest's deceptive Free from Heavy Metals Representations.

45. Plaintiff continues to see the Product for sale on Best Nest's website and amazon.com and desires to purchase the Product again if the Product did not contain lead or was advertised in a non-deceptive manner. However, as a result of Best Nest's ongoing affirmative misrepresentations and material omissions, Plaintiff is unable to rely on the Product's advertising when deciding in the future whether to purchase the Product.

**REASONABLE CONSUMERS ARE DECEIVED BY BEST NEST'S MISREPRESENTATIONS AND OMISSIONS**

46. Consumers, like Plaintiff, relied on Best Nest's Free from Heavy Metals Representations. Obviously, these statements give reasonable consumers the belief that the Product does not contain toxic contaminants like lead.

47. Consumers, like Plaintiff, want to know if a product they consume for pregnancy contains substances which are hazardous to their health. Consumers, like Plaintiff, want to know if a product they consume contains substances which are declared to be unsafe by governmental organizations. Best Nest's nondisclosure of the lead in the Product is material because reasonable consumers would deem the presence of these substances in the Product to be important in determining whether to purchase the Product. Best Nest has exclusive knowledge that the Product contains lead.

48. The fact that Best Nest's Products contain lead is not reasonably accessible to Plaintiff and consumers. Consumers, like Plaintiff, trust that the products they purchase do not contain toxic heavy metals like lead which have been intentionally or negligently added to the Products. Best Nest also has a duty to disclose the presence of lead in the Products because the

17

fact is known to Best Nest (that the Products contain lead), and the failure to disclose the lead in the Products is misleading.

49.    The lead in the Products implicates a health concern that is important to reasonable consumers when deciding to purchase Best Nest's Products. This is especially true when the marketer makes a partial omission about the quality of the product like Best Nest does here. *See e.g., Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1079 (N.D. Cal. 2014) (a plaintiff need only "allege that defendant made partial representations that were misleading due to other facts not disclosed, and identify specific representations and omissions.").

50.    A failure to disclose a fact constitutes actionable conduct if the omission goes to the central function of the product. Here, the Product's central function is for consumers to safely consume the Product and help with their pending or future pregnancy. Food products like supplements that contain harmful lead do not serve this central function. Reasonable consumers, like Plaintiff, would deem it important in determining whether to purchase the Product because Plaintiff would not have purchased the Product had they known that harmful metals like lead were in the Products. That is, the omission of the lead in the Product is material because a reasonable consumer would deem it important in determining how to act in the transaction at issue.

51.    Best Nest also made partial representations by using the Free from Heavy Metals Representations which indicate that the Product is safe and healthy and does not contain potentially harmful contaminants like lead. This partial disclosure is misleading because the lead a content of the Products was not disclosed.

### PLAINTIFF AND THE PUTATIVE CLASS MEMBERS SUFFERED ECONOMIC INJURY

52.    Plaintiff and putative class members suffered economic injury as a result of Best Nest's actions. Plaintiff and putative class members spent money that, absent Best Nest's actions, they would not have spent.

53.    With all the other prenatal supplements on the market without lead, a reasonable consumer would choose to purchase a product without lead, and not Best Nest's Products.

54.    Plaintiff and putative class members are entitled to damages and restitution for

18

the purchase price of the Product that were defective, not merchantable, and not fit for their represented purpose.

55.     Consumers, including Plaintiff, would not have purchased Best Nest's Product if they had known the Products contain lead a, a substance which has known adverse health effects on humans and especially pregnant women and their baby. Best Nest did not disclose that the Product contains lead.

56.     There are safer alternatives that Plaintiff and class members would have purchased but were denied the benefit-of-the bargain as a result of Best Nest's concealment of the lead in the Product.

57.     Because lead is a hazard to human health, Best Nest has a continuing duty to disclose the presence lead in the Product to consumers.

58.     Best Nest has failed to adequately disclose that the Product contains lead.

59.     Best Nest's Product contains a hidden defect and Plaintiff and putative class members suffered economic injury.

60.     Had Plaintiff and putative class members known about the lead, they would not have purchased the Product.

61.     Accordingly, Plaintiff brings this action individually and on behalf of other similarly situated consumers to halt the dissemination of Best Nest's deceptive advertising message, correct the deceptive perception it has created in the minds of consumers, and obtain redress for those who have purchased the Product. As a consequence of Best Nest's deceptive advertising and material omissions, Plaintiff alleges Best Nest has violated and is violating California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL") and constitutes a breach of implied and express warranties.

### NO ADEQUATE REMEDY AT LAW

62.     Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class

members who purchased the Product more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

63.   Legal remedies that require more "stringent" proof, and are therefore harder to obtain, are not "equally prompt and certain."

64.   Plaintiff is pleading the UCL claim in the alternative and asserts entitlement to equitable relief to recover the amounts paid for the Product to the extent those amounts (in whole or in part) are deemed not recoverable as damages for Plaintiff's legal claims.

65.   Plaintiff lacks an adequate remedy at law if the amount of damages is less than the price paid for the goods and restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies.

66.   Damages might be deemed not recoverable for Plaintiff's legal claims—specifically, because the UCL claim covers more conduct and therefore may be less burdensome to prove. This is because the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Product, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products that do not contain lead.

67.   Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs and other statutorily enumerated conduct).

68.   A primary litigation objective in this litigation is to obtain injunctive relief in the form of an advertising change. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to mislead consumers with the Free from Heavy Metals Representations.

69.   Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

20

CLASS ACTION COMPLAINT

70. Further, public injunctions are available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

71. It is also premature to determine whether there is an adequate remedy at law. No discovery has been conducted, and no expert reports have been exchanged. Defendant's internal documents may provide insight into different damages theories such as restitution in the form of the profits gained attributable to the conduct at issue.

## CLASS ACTION ALLEGATIONS

72. Plaintiff brings this action as a class action pursuant to Cal. Code. Civ. Proc. § 382 on behalf of the following classes:

**Nationwide Class**
All persons who purchased the Product for personal use in the United States within the applicable statute of limitations until the date class notice is disseminated.

**California Subclass**
All persons who purchased the Product for personal use in California within the applicable statute of limitations until the date class notice is disseminated.

73. Together, these are referred to as the "Class" unless otherwise indicated. Excluded from the class are: (i) Best Nest and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; and (iv) those that received a full refund of the Product's purchase price.

74. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Best Nest, or otherwise.

75. The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

76. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Best Nest's deceptive and misleading practices.

21

77. <u>Commonality</u>: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Best Nest is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Best Nest's misconduct set forth in this Complaint demonstrates that Best Nest engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c. Whether Best Nest made material omissions concerning the Products that were likely to deceive the public;

d. Whether Plaintiff and the Class are entitled to injunctive relief;

e. Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

78. <u>Typicality</u>: Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

79. <u>Adequacy</u>: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Best Nest has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

80. The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c. When Best Nest's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

81. Additionally, or in the alternative, the Class also may be certified because Best Nest has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

82. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Best Nest from engaging in the acts described, and to require Best Nest to provide full restitution to Plaintiff and Class members.

CLASS ACTION COMPLAINT

83. Unless the Class is certified, Best Nest will retain monies that were taken from Plaintiff and Class members as a result of Best Nest's wrongful conduct. Unless a classwide injunction is issued, Best Nest will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

### FIRST CLAIM FOR RELIEF

**Violation of California's Consumers Legal Remedies Act ("CLRA")**

**Cal. Civ. Code §§ 1750 *et seq.***

84. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

85. Plaintiff brings this claim under the CLRA individually and on behalf of the California Subclass against Best Nest.

86. At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

87. At all relevant times, Best Nest constituted a "person," as defined in California Civil Code section 1761(c).

88. At all relevant times, the Products manufactured, marketed, advertised, and sold by Best Nest constituted "goods," as defined in California Civil Code section 1761(a).

89. The purchases of the Products by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

90. Best Nest disseminated, or caused to be disseminated, through their advertising, false and misleading representations, including the Product's advertising that they do not contain hazardous substances such as lead. Best Nest fails to disclose that the Products contain lead. This is a material omission as reasonable consumers would find the fact that the Product contains lead to be important to their decision in purchasing the Products. Best Nest's representations violate the CLRA in the following ways:

a) Best Nest represented that the Product have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

24

b)      Best Nest represented that the Product are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c)      Best Nest advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d)      Best Nest represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

91.    Best Nest violated the CLRA because the Products contain lead. Best Nest knew or should have known that consumers would want to know that the Products contain lead.

92.    Best Nest had a duty to disclose that the Products contain lead. Based on the statutory text, legislative history (which includes the National Consumer Act), the judicial decisions and statutes that existed when the CLRA was enacted, the subsequent case law, and the many amendments to the CLRA from 1975 through 2016, failures to disclose material facts are actionable under the CLRA. In particular, subdivision (a)(5), (7), and (9) of Civil Code section 1770 proscribe material omissions.

93.    Best Nest's advertising of the Product also created the net-impression that the Product does not contain hazardous substances such as lead. Best Nest had exclusive knowledge of the material fact that the Products contain lead, and Best Nest failed to disclose this fact. Best Nest actively concealed this material fact. The fact that the Products contain lead is material to consumers because reasonable consumers would deem the existence of lead in a product they consume to support pregnancy health important in determining whether to buy the Products.

94.    Best Nest's actions as described herein were done with conscious disregard of Plaintiff and the Class members' rights and were wanton and malicious.

95.    Best Nest's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Best Nest is still representing that the Products have characteristics which they do not have.

96.    Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Best Nest from engaging in the methods, acts, and practices alleged herein.

97.    Pursuant to California Civil Code section 1782, on May 13, 2025, Plaintiff notified Best Nest in writing by certified mail of the alleged violations of the CLRA and demanded that Best Nest rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. Best Nest failed to rectify or agreed to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the CLRA. Thus, Plaintiff seeks actual, punitive, and statutory damages, as appropriate.

98.    Pursuant to section 1780(d) of the CLRA, below is an affidavit showing that this action commenced in a proper forum.

## SECOND CLAIM FOR RELIEF

### Violation of California's Unfair Competition Law ("UCL")

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

99.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

100.    Plaintiff brings this claim under the UCL individually and on behalf of the California Subclass against Best Nest.

101.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

102.    Best Nest committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and violating California Civil Code sections 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16), California Business & Professions Code section 17500 *et seq.*, and California common law breach of implied warranties.

103.    Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

26

CLASS ACTION COMPLAINT

104. Best Nest committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein.

105. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised by Best Nest. Further, Best Nest failed to disclose a material fact (that the Products contain lead) of which it had exclusive knowledge. While Plaintiff and the other Class members were harmed, Best Nest was unjustly enriched by its false misrepresentations and material omissions. As a result, Best Nest's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Best Nest's legitimate business interests, other than the conduct described herein. For example, Best Nest's competitors sell prenatal supplements that do not contain lead (see above).

106. Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Best Nest's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Best Nest's Product. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Product and Best Nest's unlawful, unfair, and fraudulent practices.

107. Best Nest's wrongful business practices and violations of the UCL are ongoing.

108. Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Best Nest's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

109. Unless restrained and enjoined, Best Nest will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

110. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seek (1) restitution from Best Nest of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction

27

prohibiting Best Nest from continuing such practices in the State of California that do not comply with California advertising laws; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

## THIRD CLAIM FOR RELIEF

### Breach of Implied Warranties

111.   Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

112.   Plaintiff brings this claim individually and on behalf of the Nationwide Class against Best Nest.

### *Implied Warranty of Fitness For A Particular Purpose*

113.   "An implied warranty of fitness for a particular purpose arises only where (1) the purchaser at the time of contracting intends to use the goods for a particular purpose, (2) the seller at the time of contracting has reason to know of this particular purpose, (3) the buyer relies on the seller's skill or judgment to select or furnish goods suitable for the particular purpose, and (4) the seller at the time of contracting has reason to know that the buyer is relying on such skill and judgment." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 25 (1985).

114.   Best Nest was at all relevant times the manufacturer, distributor, and/or warrantor of the Products. Best Nest knew or had reason to know of the specific use for which its Products were purchased.

115.   Best Nest, through the acts and omissions set forth herein, in the sale, marketing, and promotion of the Products made implied representations to Plaintiff and the Class that the Products were fit for the particular purpose of use: that people can safely consume the Products and that the Product is healthy for people. However, the Product is hazardous to consume and are not healthy.

### *Implied Warranty of Merchantability*

116.   At the time the Products were sold, Best Nest knew or should have known that Plaintiff and members of the Class would rely on Best Nest's skill and judgment regarding the safety and composition of the Products. Because the Products contain lead, they are not of the

28

same quality as those generally accepted in the trade and were not fit for the ordinary purposes for which the Product is used (i.e., to be eaten).

117.    The implied warranty of merchantability "provides for a minimum level of quality" in a good. *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 n. 2 (1995).

118.    To state a claim for breach of the implied warranty of merchantability, a plaintiff must allege a "fundamental defect that renders the product unfit for its ordinary purpose." *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 878 (N.D. Cal. 2015); *see also Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303 (2009) ("The core test of merchantability is fitness for the ordinary purpose for which such goods are used."). "Such fitness is shown if the product is in safe condition and substantially free of defects[.]" *Mexia*, 174 Cal. App. 4th at 1303.

119.    "In cases involving human food, a party can plead that a product violates the implied warranty of merchantability through allegations that the product was unsafe for consumption, contaminated, or contained foreign objects." *Barnes v. Nat. Organics, Inc.*, 2022 WL 4283779, at *8 (C.D. Cal. Sept. 13, 2022) (citing *Thomas v. Costco Wholesale Corp.*, 2014 WL 5872808, *3 (N.D. Cal. Nov. 12, 2014).

120.    Here, the Product is consumed. The Products contain a dangerous substance which compromises the safety and fitness for consuming the Products. *See Barnes*, 2022 WL 4283779, at *8 (finding breach of implied warranty sufficiently pleaded where plaintiffs alleged that the product promoted a healthy pregnancy but was actually contaminated with heavy metals and was thus not favorable for pregnancy); *Rodriguez v. Mondelez Glob. LLC*, 703 F.Supp.3d 1191, 1212-13 (S.D. Cal. 2023) (same where plaintiffs alleged that the products were unsafe for consumption because they contained levels of lead).

121.    By advertising and selling the Products at issue, Best Nest, a merchant of goods, made promises and affirmations of fact that the Product is merchantable and conform to the promises or affirmations of fact made on the Product's packaging and advertising, and through its marketing and advertising, as described herein. This advertising and advertising, combined

with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Best Nest.

122. Best Nest's advertising combined with the implied warranty of merchantability, constitute a warranty that the Products do not contain hazardous substances such as lead.

123. In reliance on Best Nest's skill and judgment and the implied warranties of fitness for this purpose and merchantability, Plaintiff and members of the Class purchased the Products to be consumed. Best Nest knew that the Products would be purchased and used without further testing by Plaintiff and Class members.

124. Consumers are the intended beneficiaries of the implied warranty as they are the ones Best Nest made the Products for and specifically marketed the Products to consumers. Best Nest breached the implied warranty of merchantability. Because the Products contain lead, they are not fit for ordinary use (i.e., consumption).

125. As a direct and proximate result of Best Nest's breach of warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products.

126. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Product, and any interest that would have accrued on those monies, in an amount to be proven at trial.

127. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for the loss of that money, as well as injunctive relief to enjoin Best Nest's misconduct to prevent ongoing and future harm that will result. Injunctive relief is the primary goal of this litigation.

128. Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Best Nest's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Best Nest's misconduct is

malicious as Best Nest acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Best Nest willfully and knowingly disregarded the rights of Plaintiff and consumers as Best Nest was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff.

129.    Best Nest's misconduct is oppressive. Reasonable consumers would look down upon it and/or otherwise would despise such misconduct. This misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Best Nest's misconduct is fraudulent as Best Nest, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Best Nest.

## REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, requests for relief pursuant to each claim set forth in this complaint, as follows:

a.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b.    Ordering restitution and disgorgement of all profits and unjust enrichment that Best Nest obtained from Plaintiff and the Class members as a result of Best Nest's unlawful, unfair, and fraudulent business practices;

c.    Ordering injunctive relief as permitted by law or equity, including enjoining Best Nest from continuing the unlawful practices as set forth herein, and ordering Best Nest to engage in a corrective advertising campaign;

d.    Ordering damages for Plaintiff and the Class;

e.    Ordering Best Nest to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

f.    Ordering Best Nest to pay both pre- and post-judgment interest on any amounts awarded; and

31

g.     Ordering such other and further relief as may be just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: July 3, 2025                                    CROSNER LEGAL, P.C.


By:        /s/ Craig W. Straub
                CRAIG W. STRAUB

Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Kurt D. Kessler (SBN 327334)
kurt@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

Attorneys for Plaintiff


### Civil Code Section 1780(d) Affidavit

I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff. This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act. Best Nest has done, and are doing, business in California, including in this judicial district.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed July 3, 2025 at San Diego, California.

By:        /s/ Craig W. Straub
                CRAIG W. STRAUB


Attorney for Plaintiff

32

CLASS ACTION COMPLAINT